IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROVANNA BEST-BEY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | NO. 06-5515 |
| PENNSYLVANIA, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER S. J.                                                                                          January 16, 2008

Currently pending before the Court is Defendant City of Philadelphia's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Response of Plaintiff thereto. For the reasons which follow, the Court grants the Motion and dismisses the amended complaint against the City of Philadelphia with prejudice.

### I.   PROCEDURAL HISTORY

Plaintiff Rovanna Best-Bey filed this *pro se* action on December 1, 2006, against multiple defendants. In his original complaint, he alleged violations of his constitutional civil rights occurring in connection with divorce and child support/custody proceedings in family court and his subsequent incarceration for civil contempt. Several defendants moved to dismiss and Defendant City of Philadelphia[1] sought a more definite statement in light of the ambiguous allegations in the

---

[1] As noted by the Moving Defendant, Plaintiff named the Philadelphia Prison System as a defendant. The Philadelphia Prison System, however, is not a separate legal entity from the City of Philadelphia and, therefore, cannot be directly sued. Griffith v. Phila. Prison Sys., Civ A. No. 99-6338, 2001 WL 876804, at *1 n.1 (E.D. Pa. May 18, 2001) (citing 53 P.S. § 16257

complaint. By way of two orders, both dated April 17, 2007, this Court dismissed the complaint against seven of the eleven original defendants and ordered Plaintiff to file an amended complaint against the City of Philadelphia within ten days. On April 27, 2007, Plaintiff filed his amended complaint, setting forth allegations against the remaining defendants.[2] Defendant City of Philadelphia filed the current Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 10, 2007, to which Plaintiff filed a timely response.

## II. FACTUAL BACKGROUND

According to the facts set forth in the original and amended complaints, together with the documents appended to those pleadings, Plaintiff was found in civil contempt for failure to comply with a family court order mandating support payments. (Court Order dated Sept. 28, 2005, attached as unmarked exhibit to Complaint) Subsequently, on September 28, 2005, he was ordered to serve thirty days incarceration at the Curran-Fromhold Correctional Facility ("CFCF") or otherwise purge himself of the civil contempt charge by making payment of $2,522.42. (Id.)

Plaintiff remained incarcerated at CFCF from September 28, 2005 until October 3, 2005, at which time he purged himself of the civil contempt charge by making his court-ordered payment. (Bail Receipt from Philadelphia Court of Common Pleas and Philadelphia Prison System Discharge Summary, attached as unmarked exhibits to Amended Complaint.) During his period of incarceration, however, Plaintiff alleges that he endured multiple inhumane and/or unconstitutional conditions, as follows:

---

(stating that "all suits growing out of [the Philadelphia Prison System's] transactions . . . shall be in the name of the City of Philadelphia.")).

[2] Although styled as "Plaintiff's Answer to City of Philadelphia," the document filed by Plaintiff on April 27, 2007 appears to be Plaintiff's Amended Complaint and shall hereinafter be referred to as such.

1. He was placed in an eight foot by twelve foot cell for three days with 25-30 other inmates, during which time he had to sleep on a filthy floor, wear the same undergarments for three days and be exposed to unknown diseases (Am. Compl. ¶¶ 1, 3, 4.);

2. He was unable to wash or use shower facilities (Id. ¶ 2.);

3. He was denied permission to observe his holy day of Friday and was stripped of his Fez (religious head dress) on Friday (Compl. ¶ 6; Am. Compl. ¶ 6.); and

4. Although Plaintiff requested a complaint form on October 2, 2005, when he was moved to "a housing POD", this request was denied because the officer on duty stated there were no complaint forms available in CFCF. (Am. Compl. ¶ 7.)

Plaintiff now asserts that these events violated his constitutional rights.

### III. STANDARD OF REVIEW FOR MOTION TO DISMISS

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005). The question before the court is not whether the plaintiff will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). Rather, the court should only grant a 12(b)(6) motion if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). When considering such a motion to dismiss, the court must "accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Notably, though, the court will not accept

unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## IV.  **DISCUSSION**

Although not clear from the face of the document, Plaintiff's amended complaint seemingly alleges that he suffered a violation of his Free Exercise rights and endured unconstitutional conditions of confinement.  Defendant City of Philadelphia now contends that these claims fail and must be dismissed.  The Court agrees.

A plaintiff may bring a section 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  42 U.S.C. § 1983 (1994).  Thus, in order to state a cause of action under section 1983, a plaintiff must demonstrate that "(1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes." Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).  "Section 1983 'is not a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, n.3 (1979)).

In the seminal case of Monell v. Department of Soc. Serv., 436 U.S. 658, 98 S. Ct. 2018 (1978), the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that "a municipality cannot be held liable under §1983 on a *respondeat superior* theory."  Id. at 691, 690.  To establish section 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and

promulgated by that body's officers," or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. at 690-691. The Third Circuit has explained that policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict" or (2) through a "course of conduct . . .when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Establishment of §1983 municipal liability also requires the second element of causation. Board of the County Commissioner's of Bryan County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). To prove this element, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.; see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (plaintiff carries burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation challenged).

As noted above, Plaintiff raises both a violation of his Free Exercise rights, as well as a Fourteenth Amendment conditions of confinement claim. The Court addresses each individually.

### A. Free Exercise of Religion Claim

"[P]risoners have a constitutional right to free exercise of their religion." Williams v. Sweeney, 882 F. Supp. 1520, 1523 (E.D. Pa.1995) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987)). At the same time, prison officials must be given substantial deference

5

in the administration of their institutions. Overton v. Bazzetta, 529 U.S. 123, 132, 123 S. Ct. 2162, 2167 (2003). Thus, in order for a prisoner to claim that the free exercise of his religion was violated, he must show that a prison rule, regulation or practice was not reasonably related to legitimate penological interests. See O'Lone, 482 U.S. at 350. To determine reasonableness of the regulations, a court must consider four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives. Williams v. Morton, 343 F.3d 212, 217 (3d Cir. 2003) (citing Turner v. Safley, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 2262 (1987). The regulation will be upheld and deemed valid if it fulfills these four factors. Id.

The allegations in Plaintiff's Amended Complaint fail on the most basic of the required showings in this standard – the identification of a prison rule, regulation or practice which violated his free exercise of religion. Indeed, the assertions in both the original and amended complaints contend only that Plaintiff was denied permission to observe his holy day of Friday (Compl. ¶ 6) and that "Plaintiff requested to keep his Fez on for his holly [sic] day which was on Friday. The officer denied his request, and also the Sergeant on duty at the time." (Am. Compl. ¶ 6.) As discussed in detail above, Defendant City of Philadelphia cannot be held liable on a respondeat superior theory for the actions of either the officer or the Sergeant. Nor does Plaintiff allege that these officers' actions resulted from any policy, custom or practice established by the Philadelphia Prison System. Accordingly, the Court must dismiss this claim against Defendant City of Philadelphia.

## B.     Fourteenth Amendment Conditions of Confinement Claim

Plaintiff's second allegation asserts that his conditions of confinement imposed by the prison violated his constitutional rights.  As noted by the Supreme Court in Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861 (1979), such a claim by a pretrial detainee invokes not the Eighth Amendment, but rather the Due Process Clause of the Fifth Amendment.  Id., 44 U.S. at 536-37, 99 S. Ct. at 1872.  The Court explained,

> [i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process, we think that the proper inquiry is whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

Id.; see also Montgomery v. Ray, 145 Fed. App'x 738, 739-40 (3d Cir.2005) ("While 'the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner,' . . . the proper standard for examining such claims is the standard set forth in Bell v. Wolfish; i.e., whether the conditions of confinement . . . amounted to punishment prior to the adjudication of guilt." (internal citations omitted)).  Notably, this Fifth Amendment due process standard applies equally to claims brought under the Fourteenth Amendment by state pretrial detainees.  See Hubbard v. Taylor, 399 F.3d 150, 158 n.13 (3d Cir. 2005).  Additionally, the standard has been deemed to apply to a civil contemnor who, like a pretrial detainee, has not been adjudged guilty of any crime.  Chadwick v. Court of Common Pleas of Delaware County, Civ. A. No. 05-1443, 2006 WL 1687043, at *6 (E.D. Pa. June 15, 2006)

Setting forth the appropriate standard, the Supreme Court emphasized that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."

Bell, 441 U.S. at 537.  Confinement inevitably involves a restriction in the "movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets. . . . Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility." Id. Thus:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . . Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

Id. at 538-39 (internal citations and footnotes omitted).  See also Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983) ("[W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.").

To determine, under the first part of the analysis, whether a condition is punitive or simply an incident of some legitimate government purpose, the Supreme Court noted that the "effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial confinement and dispel any inference that such restrictions are intended as punishment." Bell, 441 U.S. at 540.  In conducting the second part of the inquiry — assessing whether the conditions are reasonably related to the assigned purposes — the court must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time" that the adverse conditions

become excessive in relation to their assigned purposes. Id. at 542. The Supreme Court did not, however, specify the duration of confinement that could constitute "an extended period of time," nor did it elaborate upon the kind of "privations and hardship" that could constitute punishment in violation of the Due Process Clause. It concluded, however, on the facts before it, that the housing of two pretrial detainees in a cell designed for one over a period of less than sixty days did not amount to a violation of due process rights. Id. at 542-43.

As noted above, Plaintiff's conditions of confinement claim focuses primarily on the fact that he was required to sleep on the floor of an overcrowded cell for three days. The Third Circuit has yet to expressly opine on whether forcing pretrial detainees to sleep on the floor is *per se* unconstitutional under the Fourteenth Amendment. In Union County Jail Inmates v. DiBuono, the Third Circuit stated that the "unsanitary and humiliating" practice of forcing detainees to sleep on mattresses on the floor does not pass constitutional muster under the Eighth Amendment. 713 F.2d 984 (3d Cir.1983). In the subsequent case of Hubbard v. Taylor, however, the Third Circuit expressly concluded that the statement was nothing more than dictum and, in any event, limited to its own facts. 399 F.3d 150, 163 n.19 (3d Cir. 2005).

Other courts, faced with Eighth or Fourteenth Amendment claims related to floor sleeping have differed on the appropriate conclusion. Multiple courts have been intolerant of any such practice. See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir. 1989) (Fourteenth Amendment claim valid where pretrial detainee was forced to sleep on the floor for two nights); Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) ("[S]ubjecting pretrial detainees to the use of a floor mattress for anything other than brief emergency circumstances may constitute an impermissible imposition of punishment, thereby violating the due process rights of such

detainees."); Lareau v. Manson, 651 F.2d 96, 105 (2d Cir. 1981) (concluding that use of floor mattresses for pretrial detainees constitutes punishment "without regard to the number of days for which a prisoner is so confined"); Bowers v. City of Phil., Civ. A. No. 06-3229, 2007 WL 219651, at *23 (E.D. Pa. Jan. 25, 2007) ("Under the circumstances, we are compelled to conclude that the denial of beds and bedding to pretrial detainees housed in CFCF intake and in police custody for days constituted a violation of their due process rights."); Oladipupo v. Austin, 104 F. Supp. 2d 654, 660 (W.D. La. 2000) (forcing INS detainee to sleep on the floor for seven hours violated Fourteenth Amendment); Martino v. Carey, 563 F. Supp. 984, 1002 (D. Or. 1983) (concluding that floor sleeping, in conjunction with other adverse conditions of confinement violated Constitution).

On the other hand, a substantial number of courts have determined that the mere fact that a detainee was required to sleep on the floor does not, without more, rise to the level of a constitutional violation. See, e.g., Stevens v. Cottey, 145 Fed. Appx. 179, 181 (7th Cir. 2005) (under Eighth Amendment, inmate's complaint of having to sleep on metal bedframe with no mattress for three days and on a mattress on the floor for five days did not rise to the level of a constitutional violation), cert. denied, 546 U.S. 1178, 126 S. Ct. 1349 (2006); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (the fact that an inmate had to temporarily sleep on a mattress on the floor or on a table due to overcrowding is not necessarily a constitutional violation); Bennett v. Peoria County Jail, Civ. A. No. 06-1015, 2007 WL 869059, at *2 (C.D. Ill. Mar. 20, 2007) (plaintiff's ten days of sleeping on a mattress on the floor, in response to a temporary overcrowding period, was not so arbitrary or purposeless as to appear punitive); Desroche v. Strain, 507 F. Supp. 2d 571, 579-80 (E.D. La. 2007) (pretrial detainee's complaint that the holding tank was overcrowded and that he had to sleep on the floor for ten days in the crowded holding tank fails

to state a constitutional violation); Hubbard v. Taylor, 452 F. Supp. 2d 533, 541-42 (D. Del. 2006) (providing temporary sleeping accommodations on the floor for pre-trial detainees in response to overcrowding does not establish action to be punitive on its face); Brookins v. Williams, 402 F. Supp. 2d 508, 512-13 (D. Del. 2005) (no constitutional violation where, over the period of five days, a pretrial detainee was placed in a cell with two other inmates and forced to sleep on the floor, eat near the toilet and not allowed to exercise); Askew v. Fairman, 880 F. Supp. 557, 562 (N.D. Ill. 1995) (no violation when detainee was forced to sleep on the floor on many occasions over two year period); Jones v. Sheehan, Civ. A. No. 91-8146,1993 WL 153829, at *3 (N.D. Ill. 1993) (noting that a clear, non-punitive purpose existed for requiring a pretrial detainee to sleep on the floor for an extended time during a four-month period).

Under the cloud of such conflicting jurisprudence, the Court must now analyze the validity of Plaintiff's Fourteenth Amendment claim. Although some courts have effectively adopted a *per se* rule that forcing a pretrial detainee or civil contemnor to sleep on the floor, standing alone, arises to a constitutional violation,[3] the majority of cases holding that floor sleeping transgressed constitutional boundaries did so based on an examination of all the attendant circumstances of incarceration.[4] We decline, absent an explicit directive from either the Supreme Court or Third

---

[3] The Second Circuit, in Lareau, appears to be the only federal appellate decision holding that sleeping on a mattress on the floor is always unconstitutional punishment. That case, however, involved very different circumstances. Lareau was a class action filed by both pretrial and convicted inmates at a facility meant to house 390 men, which was regularly housing from 580 to 630 men. Lareau, 651 F.2d at 98-99. It was a usual practice in that facility for prisoners to have only mattresses on the floor. Id. at 99. Plaintiff, in this case, alleges no such policy or practice of floor sleeping at CFCF.

[4] See, e.g., Bowers, 2007 WL 21965, at *22 ("Considering the totality of circumstances created by the overcrowding, it is clear that constitutional violations occurred."); Lyons, 838 F.2d at 31 (finding floor sleeping unconstitutional where appellant was confined to cell for 22-23

Circuit, to adopt any *per se* rule.

     Accordingly, the Court now considers whether the circumstances of Plaintiff's confinement, as alleged in or reasonably inferred from his amended complaint, rise to the level of punitive measures that are not rationally related to any legitimate governmental measures. Although floor sleeping constitutes an uncomfortable and unpleasant condition of confinement, the Court does not find, in this particular case, that it rose to the level of a constitutional violation. Several factors guide our conclusion. First, the Court recognizes that a legitimate government purpose is at stake. The reasonable inference from Plaintiff's allegations suggests that the floor sleeping incidentally resulted from the overcrowded nature of the intake division. Brookins, 402 F. Supp. 2d at 512 (recognizing that forcing a pretrial detainee to sleep on the floor temporarily, in and of itself, serves a legitimate government purpose because "overcrowding has become a fact of life in prisons and the need of inmates to be housed somewhere underlies this legitimate governmental purpose."). Second, the conditions imposed were rationally related to that purpose – there is no suggestion or allegation that the prison required the floor-sleeping with the intent to punish Plaintiff. In fact, as indicated in the amended complaint, Plaintiff was moved within three days to a housing unit, thereby undermining any suggestion that he was forced to endure these hardships "over an extended period of time, [such] that the adverse conditions become excessive in relation to the purposes assigned to them." Bell, 441 U.S. at 542. Third, unlike many of the cases referenced above,

---

hours per day during a 27-day period); Martino, 563 F. Supp. at 1002 (noting, in class action challenging conditions of confinement, that combination of violations of inmates' rights to adequate clothing, shelter, sanitation, medical care, personal safety, disciplinary due process, access to courts and personal communication produced serious violations); Yelardy v. Taylor, Civ. A No. 003-1032, 2006 WL 680660, at *8 (D. Del. Mar. 14, 2006) (requiring pretrial detainee to sleep on mattress on floor of his cell for over 22 months in a 75 square foot cell which he shared with two other inmates violated due process).

Plaintiff has not alleged any other adverse conditions of confinement that, in combination with the floor sleeping, would rise to the level of a constitutional violation. While he asserts that he was unable to wash or shower for three days and remained in fear of contracting a disease due to the overcrowded conditions of the intake cell, such assertions do not reach Constitutional proportions, either alone or in combination. See Gay v. Shannon, 211 Fed. Appx. 113, 116 (3d Cir. 2006) (restriction on an inmate's shower privileges while attending federal proceedings did not violate Constitution); Chadwick v. Court of Common Pleas of Delaware County, Civ. A. No. 05-1443, 2006 WL 1687043, at *6 (E.D. Pa. June 15, 2006) (finding that civil contemnor being housed in close quarters with prisoners who suffer from various infectious diseases does not infringe upon the Fourteenth Amendment). Finally, although not critical to the analysis, the Court would be remiss to ignore the fact that Plaintiff, as a civil contemnor and unlike the pretrial detainees in the above cases, had the keys to his own prison. See id. (considering conditions of confinement claim "in light of Plaintiff's status as a civil contemnor, under which he is said to 'carr[y] the keys of his prison in his own pocket' because he remains 'able to purge the contempt and obtain his own release by committing an affirmative act.'" (internal quotation marks omitted)). Considered in totality, the Court declines to find that Plaintiff's allegations of sleeping on a floor in an overcrowded cell and not being allowed to shower for three days state a Fourteenth Amendment claim.[5]

---

[5] In his amended complaint, Plaintiff also alleges that he complained to the intake officers on duty at the time and requested a complaint form, but the officers stated there were no forms available. (Am. Compl. ¶ 5.) To the extent this allegation constitutes an additional claim, it is meritless. Inmates are not constitutionally entitled to a grievance procedure. Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2001). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

**V.      CONCLUSION**

      While the Court remains cognizant of Plaintiff's *pro se* status, we likewise recognize that Plaintiff's amended complaint constitutes his second bite at the pleading apple. Finding no claim against Defendant City of Philadelphia upon which relief can be granted, the Court grants its Motion to Dismiss.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROVANNA BEST-BEY, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | NO. 06-5515 |
| PENNSYLVANIA, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

AND NOW, this *16th* day of *January*, 2008, upon consideration of Defendant Marcy Bostwick's Motion to Dismiss Plaintiff's Complaint (Docket No. 17) and Plaintiff's Response thereto (Docket No. 18), it is hereby **ORDERED** that the Motion is **GRANTED** and that Plaintiff's Amended Complaint against Defendant City of Philadelphia is **DISMISSED WITH PREJUDICE.**

BY THE COURT:


*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.